IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**SHARI A. SPRINGER**
    Plaintiff,

                                                           Case No.

vs.

**BARTON D. THOMAS and**
**FARM BUREAU LIFE INSURANCE COMPANY**
    Defendants.

## COMPLAINT

COMES NOW the Plaintiff, by and through Todd A. Luckman of Stumbo Hanson, LLP, and hereby submits the following as her Complaint before this Court:

## GENERAL ALLEGATIONS

1. The Plaintiff, Shari A. Springer, is a resident of Nevada, currently residing in Las Vegas.

2. The Defendant, Barton D. Thomas, is a resident of Kansas, currently residing at 5640 Anderson Ave., Manhattan, Kansas 66503. For purposes of service of process, this Defendant may also be located at his place of business at 1508 Fair Lane, Manhattan, Kansas 66502.

3. The Defendant, Farm Bureau Life Insurance Company (hereinafter "Farm Bureau") is licensed to provide insurance in Kansas, with its principal place of business in Iowa. This Defendant can be served through its registered agent, David A. McNeill, at 5400 University Ave., West Des Moines, IA 50266.

4. The Defendants may be served in this matter with a summons and a copy of this Petition at the addresses noted above.

5.	Jurisdiction is properly before this Court pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the sum of $75,000 and the action is between citizens of different states.

6.	Venue is appropriate in the District of Kansas under 28 U.S.C. §1391(b) as Defendant Barton D. Thomas resides in the state of Kansas and Defendant Farm Bureau Life Insurance is considered a resident of Kansas pursuant to 28 U.S.C. §1391(c)(2).

7.	Plaintiff Shari Springer and Defendant Barton D. Thomas are the natural children of Blaine Thomas and Armeda Thomas, husband and wife.

8.	Blaine Thomas passed away on January 3rd, 2014 in Kansas.

9.	Before his death, Blaine Thomas was the owner of certain Annuity Contracts (hereinafter the "Annuities") provided by Defendant Farm Bureau, as outlined below:

| **Annuity No.** | **Issue Date** | **Estimated Value** |
| --- | --- | --- |
| 040-001346554F | 7-27-2009 | $114,000.00 |
| 040-001428338F | 6-14-2011 | $106,000.00 |
| 040-001349287F | 8-20-2009 | $114,000.00 |
| 040-001343825F | 6-28-2009 | $114,000.00 |
| 040-001353274F | 9-24-2009 | $112,000.00 |

10.	The Annuities were single premium annuities, and Blaine Thomas was not required to pay continuing premiums to maintain the same.

11.	Subsequent to June 14, 2011, upon information and belief, the Annuities provided for disposition to two joint beneficiaries upon the death of Blaine Thomas: Shari Springer and Barton Thomas.

12. In 2011, at the request of Blaine and Armeda Thomas, the Plaintiff travelled from Las Vegas Nevada to assist her elderly parents with their medical care and certain business matters, specifically the care of certain antiques collected by Blaine Thomas.

13. On several occasions both before and after 2011, the Plaintiff was subjected to verbal harassment and threats by Barton Thomas, mostly over the care and treatment of their parents despite the fact that her assistance was requested by Blaine and Armeda Thomas.

14. The Plaintiff determined in late 2011 that Armeda Thomas, then in a local nursing home, was subjected to elder abuse and possible negligent treatment. Armeda contended that Barton Thomas hurt her in July of 2011 while she was at the nursing home. There were other allegations of abuse and neglect.

15. As a result, Armeda Thomas was first transferred to a Junction City hospital in November of 2011. Shortly thereafter, Barton Thomas arranged for her to be transferred to an assisted living facility in Junction City without consulting the Plaintiff or Blaine Thomas. In late January of 2011, due to concern over Armeda's health based upon issues raised by the assisted living facility, Blaine Thomas and the Plaintiff returned Armeda to the hospital.

16. It was then agreed between the Plaintiff and Blaine Thomas that Armeda would be cared for by the Plaintiff at her residence, and that Armeda would be examined by specialists at the Cleveland Clinic in Las Vegas, Nevada. This was to occur on February 14, 2012, but the Defendant Barton Thomas refused to allow Armeda to be removed, and instead insisted she be placed in a nursing home, and that if the Plaintiff took Armeda that he would have the Plaintiff arrested for kidnapping.

17. Defendant refused to assist in changing Armeda's care or altering her treatment, despite the repeated requests of the Plaintiff.

18. The Plaintiff filed a Conservatorship and Guardianship Petition in Riley County, Kansas on February 16, 2012 to be named the Guardian and Conservator for Armeda Thomas.

19. The Defendant actively opposed the Plaintiff's requests to the Riley County court, and he enlisted Blaine Thomas to also contest her appointment.

20. Barton Thomas attempted to disqualify the Plaintiff from being appointed based upon disputes and arguments that he himself caused. At the same time the Defendant demanded that Armeda be returned to a nursing home that he and Blaine Thomas would name, and required that the Plaintiff discontinue the Guardianship Case.

21. Despite the opposition of the Defendant, the Plaintiff was appointed as Guardian and Conservator for Armeda Thomas on March 27, 2012.

22. The Plaintiff was without sufficient financial information to determine the nature and extent of Armeda's assets at the time of the Plaintiff's appointment as conservator. Armeda, due to her institutionalization, did not even have the basic tax return, asset and income information to allow the Plaintiff to provide a proper inventory to the Riley County court.

23. At the time of her appointment as conservator of Armeda, the Plaintiff was generally aware of the existence of the Annuities, and believed that Armeda was a beneficiary of the policies. However, the Plaintiff had no written documents giving any specific information as to the Annuities, and Armeda had no information of her own.

24. Upon information and belief, the Defendant acted to prevent third parties from supplying financial information to the Plaintiff regarding Armeda's assets. Specifically, that Blaine Thomas, acting under the undue influence of the Defendant, took action to block tax information from being provided by his accountants.

25. In April of 2012 it was agreed by the Plaintiff and Defendant to provide in-home caregivers to Blaine and Armeda to see to their daily medical and personal care needs.

26. In April or May of 2012, one of the caregivers was enlisted by the Defendant to submit an offer to the Plaintiff to resolve the dispute over the guardianship action. The Defendant offered to pay the Plaintiff $300,000 in cash to dismiss the Riley County action and allow the placement of Armeda in a nursing home. At the same time, it was noted that if she refused to do so, she would be disinherited. The Plaintiff refused to dismiss the action or comply with the Defendant's demands.

27. After the parties continued to battle in the Riley County case, the Court ruled on May 21, 2012 that the requested financial information must be turned over by a deadline, or the parties holding this information would be subject to a contempt order. Despite this, the attorney for Blaine Thomas continued to dispute the matter, by way of a request for appointment of a new conservator.

28. On June 6, 2012 an Agreed Protective Order was entered in the Riley County case, and then, on or about June 15, 2012, the attorney for Blaine Thomas turned over the requested financial information. Included within this disclosure were print outs showing basic information regarding the Annuities. However, this information did not include specifics about the beneficiaries of the Annuities.

29. Only days after the turnover of information by Blaine Thomas, certain Beneficiary Designation forms were submitted to Farm Bureau regarding the Annuities. These forms changed the beneficiaries to Jennifer Whalen, Norman Thomas, Kelsey Thomas, Layton Thomas, Jade Cole and the Defendant.

30. These forms are alleged to contain the signature of the owner of the Annuities, Blaine Thomas. However, upon information and belief, the signatures are forgeries.

31. Dissatisfied with the provision of information regarding the Annuities, the Plaintiff attempted to obtain ownership and beneficiary information as to the Annuities from Patricia Hamilton, agent of Farm Bureau. Due to the fact that neither the Plaintiff nor Armeda Thomas were owners of the Annuities, Hamilton refuses to provide any information.

32. Unknown to the Plaintiff at the time of her inquiry, Farm Bureau was in possession of a Power of Attorney for Blaine Thomas, appointing attorney Lloyd Graham as attorney-in-fact. However, the provisions of the Power of Attorney are only effective upon the incapacity or disability of Blaine Thomas, as established by two physicians. Despite these provisions, Hamilton and Farm Bureau treat the Power of Attorney as valid and controlling and seemingly treat Lloyd Graham as attorney-in-fact.

33. During all times relevant hereto, the Plaintiff maintained a close relationship with Blaine Thomas, and he eventually found that the Plaintiff was correct regarding Armeda's medical needs. Soon, Blaine Thomas saw that Armeda was improving and agreed she should live with the Plaintiff in Las Vegas. Armeda's medical condition improved markedly with proper care and correct diagnosis by physicians. This improvement also is related to Armeda's residing away from Riley County and in Las Vegas with the Plaintiff.

34. In the year that followed the change in beneficiaries, Blaine Thomas never indicated to the Plaintiff that she had been removed as a beneficiary on the Annuities.

35. In May of 2013 a dispute arose between Blaine Thomas and Barton Thomas about a substantial bill to a contractor for repairs to Blaine's home. The contractor was a friend of Barton Thomas, but Blaine did not want to submit payment due to substandard repairs and

excessive cost.  An argument arose between Barton and Blaine that eventually resulted in Blaine's caregivers reporting Barton Thomas to Adult Protective Services.

36.     Blaine had previously cashed in a Farm Bureau policy to obtain $76,128.43 to pay for the repairs, but misplaced the check.  Rather than stop payment and issue a new check, Farm Bureau agent Patricia Hamilton later came by the home of Blaine Thomas, while the Plaintiff was present and asked him to sign a document.  A copy of this document was not given to him, but eventually resulted in the closing of another Farm Bureau account granting Blaine proceeds in the amount of $109,287.98.  At the time of this transaction, a request was made for account information on the remaining Annuities.

37.     Despite this request for account information, a response was never given by Patricia Hamilton so in July of 2013 Blaine Thomas again asked for this information.  Despite his clear ownership of the account Hamilton refused to respond to the question, citing the Power of Attorney of Lloyd Graham.

38.     In August of 2013 Blaine Thomas was hospitalized.  During that time Defendant Barton Thomas painted over a fence and a wall on property of Thomas Signs, the business Blaine Thomas built in Manhattan, Kansas.  The fence and wall contained an artistic rendering done by Blaine many years before, of which he was very proud.  As a result of this, Blaine complained to the Defendant about this in the presence of the Plaintiff on or about September 8th, 2013, and an argument ensued that caused great emotional turmoil for the Plaintiff and Blaine Thomas, and which required the Plaintiff to seek medical assistance.

39.     On November 19, 2013 the Conservatorship in Riley County ended in the determination that Armeda has made a full recovery of her faculties and was deemed competent to handle her own affairs.

40.     On November 23, 2013 the Plaintiff assisted Blaine Thomas in submitting a complaint to the Kansas Insurance Department regarding the failure of Patricia Hamilton to provide information on the Annuities and the beneficiaries to those funds, and the refusal to turnover information due to the Power of Attorney.

41.     On December 18, 2013 Farm Bureau responded to the complaint, and finally recognized that the Power of Attorney was not in effect.  As a corrective measure, Farm Bureau indicates it will require notarized signatures for transactions on the account.  It also provides full information on all policies held by Blaine Thomas at that time, including the Annuities.  This information also shows that the beneficiaries are as provided in the change form submitted in June of 2012.  Upon receipt of this information on December 30, 2013 Blaine Thomas remarks that the beneficiary information is not correct.  Before further action can be taken, Blaine Thomas passes away four days later.

## COUNT I
## DECLARATORY JUDGMENT

42.     The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 of this Petition.

43.     Under 28 U.S.C. §2201, or under K.S.A.§60-1701 *et seq.*, this Court is empowered to grant declaratory judgment.

44.     Upon information and belief, Defendant Farm Bureau has not distributed the Annuity funds to any of the beneficiaries, and instead retains possession of the same.

45.     The change in beneficiaries on the Annuities of Blaine Thomas in June of 2012 was the product of fraud, forgery and/or undue influence.

46. The forgery or undue influence regarding the beneficiary change instruments renders the change void *ab initio*, invalid and ineffective.

47. Declaratory judgment should be entered in this case determining that the change in beneficiaries is void, of no effect and restoring the Plaintiff as beneficiary of the Annuities. This judgment should be effective not only against Defendant Barton Thomas, but also Defendant Farm Bureau.

48. That upon entry of declaratory judgment, Defendant Farm Bureau should be ordered to turn over proceed of the Annuities to the Plaintiff in light of the invalidation of the beneficiary changes in June of 2012, along with relief as outlined below.

## COUNT II
## FRAUD/FORGERY

49. The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 of the Petition.

50. The beneficiary change documents allegedly executed in June of 2012 were false and fraudulent writings, as these documents were not executed by the owner of the Annuities, Blaine Thomas, and instead were forgeries.

51. Upon information and belief, the beneficiary change document allegedly executed in June of 2012 was executed by the Defendant, Barton Thomas, or a party at his direction, in order to deprive the Plaintiff of her interest in the Annuities.

52. The submission of the beneficiary change documents in June of 2012 was not for any legitimate estate planning purpose, nor did it in any way reflect the desires of Blaine Thomas. Instead, the action was taken by Barton Thomas to fulfill his threat to disinherit the Plaintiff and

to punish her for her actions in the Riley County case. Barton Thomas was aware that the change in beneficiaries was not the desire of Blaine Thomas.

53. Barton Thomas performed these actions with the intent to defraud the Plaintiff and deny her any inheritance from her father.

54. These actions damaged the Plaintiff by denying her half of the funds in the annuities in an amount in excess of $280,939.66.

55. The Plaintiff is entitled, as a result of the fraudulent actions of the Defendant, Barton Thomas, to damages as prayed for in this Petition.

## COUNT III
## INTERFERENCE WITH EXPECTANCY

56. The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 of the Petition.

57. Prior to June of 2012, the Plaintiff maintained an expectancy in the Annuities owned by Blaine Thomas, pursuant to the existing beneficiaries upon said contracts.

58. Defendant Barton Thomas intentionally interfered with this expectancy right by taking certain actions to divest the Plaintiff of her interest, including, but not limited to, forgery of beneficiary change documents, fraudulent representations regarding said changes, undue influence over Blaine Thomas, duress of Blaine Thomas and others and misrepresentations and concealment regarding these actions.

59. The Plaintiff, as the daughter of Blaine Thomas, was reasonably certain to receive the expectancy but for the Defendant's interference.

60. The Defendant's actions were based upon malice and the intent to deprive the Plaintiff of her expectancy, due to the Plaintiff's refusal to abide by the Defendant's demands.

61. The Plaintiff is entitled, as a result of these actions of the Defendant, Barton Thomas, to damages as prayed for in this Petition.

## COUNT IV
## UNDUE INFLUENCE AND DURESS

62. The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 of the Petition.

63. This cause of action is submitted as an alternative cause of action to Count II.

64. The actions of the Defendant, Barton Thomas, show the use of threats, intimidation, coercion, and compulsion in order to force Blaine Thomas to follow the Defendant's wishes in regards to his dealings not only with the Plaintiff, but also Armeda Thomas and other third parties.

65. The Defendant, as demonstrated by his verbal confrontations with the Plaintiff, Blaine Thomas and others shows that the Defendant would use threats and intimidation to obtain what he desired, in this case the removal of the Plaintiff as a beneficiary of the Annuities.

66. The Defendant Barton Thomas was in a confidential relationship with Blaine Thomas.  This is evidenced not only by his position as a child of Blaine Thomas, but also his purchase and operation of Thomas Sign Service, a business developed by Blaine Thomas, his close monitoring of Blaine's medical care and financial status and his direct dealings with Blaine as to repairs to his personal residence.  Blaine's age and infirmity made him particularly vulnerable to threats and acts of undue influence by Barton Thomas.

67. The relationship between Defendant Barton Thomas and Blaine Thomas was such that Blaine Thomas was deprived of his free will to determine a disposition of his assets, and the actions of Barton Thomas overcame Blaine's resistance to disinherit the Plaintiff such that

11

Blaine Thomas adopted the will of the Defendant in either assisting in the change in beneficiaries, or executing the same under threats from Barton Thomas.

68. In acting to change the beneficiary status of the Plaintiff, the Defendant placed Blaine Thomas under such fear as to deprive him of free will and judgment.

69. The Plaintiff is entitled, as a result of these actions of the Defendant, Barton Thomas, to damages as prayed for in this Petition.

WHEREFORE, the Plaintiff requests that it be granted judgment against the Defendant Barton Thomas in the following particulars:

a. Declaratory judgment that the changes to the beneficiaries to the Annuities are void and of no effect, and that the Plaintiff is vested with an undivided one-half interest in the Annuities, with the same to be distributed to her;

b. In the alternative, that the Court award her judgment against the Plaintiff in the amount of $280,939.66 representing her interest in the Annuities;

c. Judgment for her costs, expenses, attorney fees and other charges incurred in investigating, filing and prosecuting this case;

d. Judgement for filing fees and other costs;

e. Judgment for interest on any judgment awarded, both before and after filing;

f. Judgment for exemplary and punitive damages; and

g. Such other and further relief as the Court deems fair, just and equitable.

FURTHER, that the Plaintiff requests that it be granted declaratory judgment against the Defendant Farm Bureau that the changes to the beneficiaries to the Annuities are void and of no effect, and that the Plaintiff is vested with an undivided one-half interest in the Annuities, with

the same to be distributed to her from funds retained by Farm Bureau, her filing fees and costs in the matter and such other and further relief as the Court deems fair, just and equitable.

        Respectfully submitted:
        **STUMBO HANSON, LLP**

        By:  */s/ Todd A. Luckman*
        **TODD A. LUCKMAN #16535**
        2887 SW MacVicar Ave.
        Topeka, KS  66611
        (785) 267-3410; Fax (785) 267-9516
        todd@stumbolaw.com
        Attorneys for the Plaintiff