IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHARI SPRINGER,

                Plaintiff

vs.                                                         Case No. 15-4862-SAC

BARTON THOMAS and
FARM BUREAU LIFE
INSURANCE COMPANY,

                Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the motions to dismiss or stay (Dks. 6 and 8) filed by the defendants Barton Thomas and Farm Bureau Life Insurance Company ("FBLIC"). Both movants argue for the court's application of the *Colorado River* doctrine, and FBLIC separately argues for discretionary denial of declaratory judgment jurisdiction under the *Brillhart* standard. The plaintiff, Shari Springer, is suing her brother, Barton Thomas, alleging she was a joint beneficiary with her brother on FBLIC annuities owned by their father, Blaine Thomas, until her father's signature was forged on change of beneficiary forms which did not name her as a beneficiary. Information on the annuities was withheld from the plaintiff, her mother and her father for some time. Just four days after learning about the annuities, Blaine Thomas died before correcting the beneficiaries.

Springer seeks relief on four counts. Her first count seeks a declaratory judgment against Barton Thomas and FBLIC that the change in beneficiaries in June of 2012 "was the product of fraud, forgery and/or undue influence" rendering the beneficiary forms void. She also asks that the declaratory judgment order FBLIC to turn over the annuities' proceeds to her. Her second count is an action for fraud and forgery against Barton Thomas for having the false or forged change of beneficiaries executed with the intent to defraud the plaintiff of her inheritance. She asks for damages against Barton in the amount of $280,939.66 and for punitive damages. Her third count is an action against Barton Thomas for interference with expectancy in the annuities by his malicious actions to deprive her of that interest through "fraudulent representations regarding said changes, undue influence over Blaine Thomas, duress of Blaine Thomas and others and misrepresentations and concealment regarding these actions." (Dk. 1, ¶ 58). The plaintiff asks for actual and punitive damages. Her fourth count is alleged as an alternative action against Barton Thomas to her second count for fraud and forgery. She alleges Barton used "threats, intimidation, coercion and compulsion in order to force Blaine Thomas" to remove the plaintiff as a beneficiary to the annuities. She seeks actual and punitive damages here too.

Springer filed her complaint in this court on March 27, 2015. She asserts diversity jurisdiction under 28 U.S.C. § 1332. She alleges she is a

resident of Nevada, the defendant Thomas is a resident of Kansas, and the defendant FBLIC has its principal place of business in Iowa. The amount in controversy exceeds $75,000 considering just her alleged share of the annuities.

Approximately two weeks before this federal action was filed, FBLIC filed a petition for interpleader and declaratory and injunctive relief in the District Court of Riley County, Kansas. FBLIC's first amended petition filed on March 13, 2015, names as defendants:  the children of Blaine Thomas, Shari Springer and Barton Thomas; their mother, Armeda Thomas; the other beneficiaries named on the annuities; and Cindy Thomas as the listed beneficiary entitled to the proceeds of the payment contract. (Dk. 9-1). The petition alleges that Armeda Thomas is the surviving wife of Blaine Thomas and that she is asserting the annuity contracts and payment contract are part of the Blaine Thomas' augmented estate to which she is entitled to a spousal share. The petition describes the named beneficiaries—Barton Thomas, Jade Cole, Kelsey Thomas, Layton Thomas, Norman Thomas, and Jennifer Whalen—as those listed in FBLIC's records entitled to the proceeds of the annuities upon Blaine Thomas' death. The petition notes that Cindy Thomas claims the proceeds of the payment contract as its sole beneficiary. Finally, the petition alleges:

> 16.  Springer claims she was a listed beneficiary to the Annuity Contracts along with Barton Thomas before June of 2012. She asserts fraudulent and forged beneficiary change forms were provided to FBLIC to substitute Norman Thomas, Kelsey Thomas, Layton Thomas,

3

>Jade Cole and Jennifer Whalen in her place as beneficiaries to the Annuity Contracts.
>17. Accordingly, Springer claims she is entitled to the proceeds of the Annuity Contracts as a "co-beneficiary" of those agreements.

(Dk. 9-1, p. 4). FBLIC pleads that "it cannot reasonably determine who are the appropriate payees and in what amounts," and asks the court to exercise its discretion and either have these proceeds deposited with the court or retained by FBLIC until the court resolves the competing claims to the funds now held by FBLIC. *Id*. FBLIC prays that the parties be restrained from commencing any action against it regarding these annuities or contract payment and that a judgment be entered requiring the defendants to settle their rights to these proceeds and discharging plaintiff from all liability except to the parties found to be entitled to the proceeds. *Id*. at pp. 4-5.

The defendant Barton Thomas asks for an order that either dismisses or stays Springer's action, because the pending Riley County interpleader suit is parallel to Springer's federal action for declaratory judgment and state tort liability and because the relevant factors favor the federal court declining or staying its exercise of jurisdiction under the *Colorado River* doctrine. FBLIC likewise asks the court to abstain based on similar arguments but adds an argument for not exercising declaratory judgment jurisdiction against it based on *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The plaintiff denies that the state interpleader action is parallel to her federal action and contends the factors here do not establish exceptional circumstances for *Colorado River* abstention.

4

The Supreme Court recently reiterated "the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'" *Lexmark Intern., Inc. v. Static Control Components, Inc.*, ---U.S.---, 134 S. Ct. 1377, 1386 (2014) (quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. ---, 134 S. Ct. 584, 591 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))). The Tenth Circuit has also said that, "this obligation, although great, is not absolute," and that, "[i]t is well-established that 'federal courts have the power to refrain from hearing,' among other things, 'cases which are duplicative of a pending state proceeding.'" *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir.) (quoting *Quakenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716-17 (1996)), *cert. denied*, 133 S. Ct. 2831 (2013). The *Colorado River* doctrine has as its "core" principle—"the avoidance of duplicative litigation"— and that the doctrine "concerns itself with efficiency and economy" with the goal "'to preserve judicial resources.'" *Id.* (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). The *Colorado River* doctrine is built upon the notion that, "judicial economy concerns may justify deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case." *Rienhardt*, 164 F.3d at 1302 (citing *Colorado River*, 424 U.S. at 817-20). Still, "the appropriate circumstances for deferral under the *Colorado River* Doctrine are 'considerably more limited than the

5

circumstances appropriate for abstention' and must be 'exceptional.'" *Id*. at 1303 (quoting *Colorado River*, 424 U.S. at 817-18).

Thus, in approaching these cases, the Tenth Circuit counsels:

> As a general rule, "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction….'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236 (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). But, at times, "reasons of wise judicial administration" must weigh in favor of "permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding." *Id*. at 818, 96 S.Ct. 1236. Granted, these occasions are not ordinarily encountered. Yet such "circumstances, though exceptional, do nevertheless exist." *Id*.

*D.A. Osguthorpe Family Partnership*, 705 F.3d at 1233. The Tenth Circuit regards the "'better practice is to stay the federal action pending the'" state's outcome, because if "'the state proceedings to do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without plaintiff having to file a new federal action.'" *Foxfield Villa Associates, LLC v. Regnier*, 918 F. Supp. 2d 1192, 1197 (D. Kan. 2013) (quoting *Fox v. Maulding*, 16 F.3d 1079, 1083 (10th Cir. 1994)).

Before balancing the different factors, "the district court must determine 'whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Allen v. Board of Educ., Unified School Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995) (quoting *Fox. v. Maulding*, 16 F.3d at 1081); *see Jones v. Great Southern Life Ins. Co.*, 232 F.3d 901 (10th Cir.

6

2000) (Table). "'Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action.'" *Gerbino v. Sprint Nextel Corp.*, 2013 WL 2405558 at *3 (D. Kan. may 31, 2013) (quoting *Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004)). Consequently, this initial step does not require identical actions. But in conducting this examination, the court looks at the actual state action without considering how it could have been brought. *Foxfield Villa*, 918 F. Supp. 2d at 1197; *see Allen*, 68 F.3d at 403.

The parties are substantially the same except that the plaintiff Springer failed to name as parties those currently listed as beneficiaries on the FBLIC-issued annuities.[1] As the defendants note, there is certainly a serious question about Springer's ability to obtain relief on her declaratory judgment claim without joining these current beneficiaries. After filing her response opposing these motions, Springer has now filed a motion for leave to file an amended complaint to add these named beneficiaries. The court is satisfied that the parties are substantially the same.

Springer argues the issues here are not substantially the same as the issues in the state action. She points to her tort claims here for undue influence and interference with expectancy of inheritance as being separate claims that would not be impacted by the state court's judgment in the

---

[1] Armeda Thomas has disclaimed any interest in the annuities and has filed a motion to be dismissed from the interpleader action. (Dk. 7-5).

7

interpleader action. In making this argument, Springer inexplicably takes the position that her only legal challenge to the annuity proceeds in the state action would be forgery: "[I]f the matter of forgery of the annuities is fully determined in state court this does not foreclose the Plaintiff's tort claims, as they would still exist and could be pursued." (Dk. 12, p. 5). While Springer recasts and repeats this argument over the span of several pages in her brief, the analysis is only conclusory and lacks any supporting legal authorities or supporting facts and details. The court struggles with Springer's conclusory analysis for several reasons. First, she does not explain what prevents her from alleging, or why she would not allege, undue influence as a legal basis entitling her to some of the annuity proceeds in state court. *See Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194 (1991) ("[A] party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake."). Second, Springer's tort claim for interference with expectancy of inheritance requires her to prove "independent[] tortious conduct (such as undue influence, fraud, or duress)." *Lindberg v. U.S.*, 164 F.3d 1312, 1319 (10th Cir. 1999). Springer has not explained how her proof of this element would entail substantially different allegations and proof from that offered in the state case. If Springer does prevail on her forgery or undue influence allegations, then her tort claims in federal court may entitle her to more than the

8

annuity proceeds. Finally, and most importantly, if Springer does not prevail on her forgery or undue influence allegations in state court, and the determination is made that she was not a valid current beneficiary, it would fall to Springer to show how her federal complaint alleges other actionable injuries resulting from other actionable tortious acts done by the defendant Thomas. In sum, the two cases involve substantially the same issues going to Springer's claim to annuity proceeds based on the defendant Thomas' alleged wrongful actions taken in changing the beneficiaries and removing her as beneficiary. The interpleader character of the state action does not make the similarity of the issues any less substantial. The parties would be expected to litigate these issues in much the same way in both courts. There is substantial overlap of parties and issues as alleged in the two cases making them parallel under the *Colorado River* doctrine.

The Supreme Court has provided these factors as relevant in determining whether "exceptional circumstances" exist:

> (1) assumption by either court of jurisdiction over a *res*; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Saucier v. Aviva Life and Annuity Co.*, 701 F.3d 458, 462 (5th Cir. 2012 (citation omitted); *see D.A. Osguthorpe Family Partnership*, 705 F.3d at 1234; *Health Care and Retirement Corp. v. Heartland Home Care, Inc.*, 324 F. Supp. 2d 1202, 1205 (D. Kan. 2004). These "factors are not a 'mechanical

checklist,' 'careful balancing' is required, and '[t]he weight to be given to any one factor may vary greatly from case to case.'" *D.A. Osguthorpe Family Partnership*, 705 F.3d at 1234 (quoted *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

    The first two factors do not favor applying the doctrine, as the annuity proceeds remain with FBLIC, and the federal forum is not less convenient to the parties and witnesses. The third factor—avoidance of piecemeal litigation—is central to the *Colorado River* doctrine. *Gerbino v. Sprint Nextel Corp.*, 2013 WL 2405558 at *7. By having failed to join all of the current beneficiaries to the annuities, the likelihood of piecemeal litigation arguably exists as a declaratory judgment in this court would not provide FBLIC all of the relief sought in state court. As stated before, the plaintiff Springer has moved to amend her complaint to add the current beneficiaries to her declaratory judgment count. Even with all named to the federal suit, "[a] comprehensive federal adjudication going on at the same time as a comprehensive state adjudication might not literally be "piecemeal," but "[i]t is, however, duplicative." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 566 (1983). "[T]he avoidance of duplicative litigation---is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Family Partnership*, 705 F.3d at 1233. The simultaneous prosecution here would wastefully duplicate the time and effort of counsel, courts, parties and witnesses. *State Farm Mut. Auto. Ins. Co. v. Scholes*,

10

601 F.2d 1151, 1155 (10th Cir. 1979). If both cases proceeded, this "would create a risk of inconsistent results and a race to judgment," as the issues and factual assertions are nearly identical. *Gerbino*, 2013 WL at 2405558 at *8. Beside discovery disputes, dispositive or partially dispositive motions on the shared elements and proof carry the serious potential for conflicting rulings coming down almost simultaneously:

> If the rulings conflict, the goals of judicial economy and wise judicial administration are defeated. See generally *Giles* [*v. ICG, Inc.*], 789 F.Supp.2d [706] at 713 [(S.D.W.Va. 2011)] ("[P]ermitting multiple courts to decide the same issues on whether the defendants breached their fiduciary duties in approving the … deal is judicial overkill, and harmful to all parties in this action. It would be unjust and unnecessary to impose potentially incompatible standards of conduct on the defendants."). Moreover, as other courts have noted, defendants "could face duplicative discovery requests and markedly different general litigation schedules in each court." *Id*.

*Gerbino*, 2013 WL 2405558 at *8. On these facts, the third factor weighs in favor of staying the case.

FBLIC's state interpleader action was filed first by a couple weeks. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 461 U.S. at 21. FBLIC points out that all of the defendants have been serviced except one who is deceased, and most have filed their answers. In the federal suit, the defendants have been serviced and have filed these pending motions in lieu of their answers, and the plaintiff has pending a motion to amend. The difference in progress between the two actions is nominal. This factor is neutral.

11

The present suit involves no questions of federal law. The Tenth Circuit has noted that the absence of a federal issue may "favor abstention when the bulk of the litigation concerned state law." *Jones v. Great Southern Life Ins. Co.*, 232 F.3d 901, 2000 WL 1375309 at *2 (10th Cir. 2000) (citing *DeCisneros v. Younger*, 871 F.2d 305, 309 (2nd Cir. 1989)). The litigation here involves state law exclusively. But as the plaintiff notes, none of the issues require addressing unsettled or controversial areas of Kansas law. This factor is essentially neutral on a stay. Finally, there are open questions on whether the state court action would offer "an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 461 U.S. at 28. The movants have not analyzed the issues as to show that the state court judgment would result in claim or issue preclusion on the plaintiff's remaining tort claims or would not require additional damage proceedings in federal court. The movants simply have not persuaded the court, however, that a state court judgment necessarily would resolve all the issues to be decided on the plaintiff's claims here. "[T]he Court may enter a stay under the *Colorado River* doctrine only if it has 'full confidence' that the parallel state litigation will end the parties' dispute." *Health Care*, 324 F. Supp. 2d at 1207 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)). This factor weighs against a stay.

Most of the factors are neutral, and one factor favors a stay while another weighs against it. After considering the different factors, the

court cannot say that exceptional circumstances exist here to justify a stay of the instant action. While conservation of some judicial resources would be served by a stay, the movants have failed to show that the pending state litigation would offer a complete resolution of the issues presented in this federal case. Thus, the court is without full confidence that the state court litigation will dispose of the federal dispute in its entirety. The defendants' motions fail to show the required exceptional circumstances that would justify applying the *Colorado River* doctrine.

Alternatively, the defendant FBLIC argues the court should decline to exercise jurisdiction under the Declaratory Judgment Act based on *Brillhart v. Excess Inc. Co.*, 316 U.S. 491 (1942). When the issue of contemporaneous state and federal parallel proceedings is raised in a federal declaratory judgment action, a court analyzes the issue under *Brillhart* even when diversity of citizenship exists as an independent jurisdictional basis for the action. *Wilton v. Seven Falls Co.*, 515 U.S. 277 286-87 (1995); *see U.S. v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002). If the plaintiff, however, seeks coercive relief also, then *Brillhart* is not applied:

> If the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart*, to refuse to entertain the suit. *See Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co.*, 214 F.3d 562, 564 (5th Cir. 2000) (holding that in a suit seeking coercive relief as well as declaratory relief, broad *Brillhart* standard inappropriate).

*City of Las Cruces*, 289 F.3d at 1181. The Fifth Circuit "precedent states that '[w]hen an *action* contains any claim for coercive relief,' *Colorado River* applies." *New England Ins. Co. v. Barnett*, 561 F.3d 392, 397 (5th Cir. 2009) (citation omitted) (two exceptions to this rule for frivolous coercive claims or for coercive claims filed only to circumvent *Brillhart*). Believing the Tenth Circuit would follow Fifth Circuit precedent as indicated in *Las Cruces*, the court finds that the plaintiff Springer's coercive claims for damages preclude applying here the broader and more discretionary *Brillhart* standard. The defendant FBLIC is unable to rely on *Brillhart.*

IT IS THEREFORE ORDERED that the motions to dismiss or stay (Dks. 6 and 8) filed by the defendants Barton Thomas and FBLIC are denied.

Dated this 22nd day of May, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge