IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHARI A. SPRINGER,

              Plaintiff

vs.                                                 Case No. 15-4862-SAC

BARTON D. THOMAS, et. al,

              Defendants.

MEMORANDUM AND ORDER

        This case all too well represents how litigation involving family disputes over money can involve issues, behavior and positions that become entangled and hardened. Even so, the parties' filings with attached exhibits create a strong impression that a settlement was reached in mediation and that both sides now are seeking to have some matters revisited or clarified. More specifically, one party is disputing that she participated in and consented to the settlement and all parties are disagreeing over the final written release terms of the settlement agreement. The court intends to address only the undisputed issues of fact and those controlling issues of law that have been fully briefed in the hope that the parties will then move forward within the allotted time and submit final dismissal papers or a proper motion to enforce the settlement agreement. If this is not timely accomplished, the magistrate judge will be directed to resume pretrial control of the case.

The only motion presently pending before the court is the "Motion to Enforce Compliance of Rule 16.3 Violation" (Dk. 114), filed by the counterclaimant and cross claimant, Armeda Thomas. In that motion, Armeda avers she was not present at the mediation, did not give her attorney authority to settle the case, did not "read the Mediation Minute Sheet," and did not give "anyone authority to sign it on my [her] behalf." (Dk. 116, p. 7). Armeda asks the court to find that the parties' mediation did not comply with D. Kan. Rule 16.3 in that she was not personally present and no one with settlement authority for her was present at the mediation conference and, therefore, that "any purported 'agreement' reached is not enforceable as to Armeda." (Dk. 114, p. 3). Armeda's motion fails to cite any authority for her position that the mere violation of Rule 16.3 vitiates any settlement agreement. Armeda also quotes a Kansas Supreme Court opinion summarizing the law on an attorney's authority to settle a client's claims, but she does not argue for its application here.

The defendants, Barton D. Thomas, Jennifer Whalen, Kelsey Thomas, Layton Thomas, Jade Cole, and the Estate of Norman C. Thomas then filed a joint response (Dk. 118) opposing Armeda's motion. The defendants state that the plaintiff Shari Springer participated in the mediation through a telephone conference and that Ms. Springer, as the duly appointed attorney-in-fact with express settlement authority for her mother, Armeda Thomas, represented Armeda at the mediation. The defendants

attach a copy of the 2014 Durable Power of Attorney ("DPOA") of Armeda Thomas that appointed Shari Springer and gave her the authority to settle or compromise any claims held by Armeda Thomas. (Dk. 118, p. 16). The defendants state that J.B. King, Armeda's attorney, and Ms. Springer's own counsel, Todd Luckman, communicated with Ms. Springer during the mediation. The defendants contend J.B. King had apparent authority to settle for Armeda and Ms. Springer had apparent and actual authority to settle for Armeda. The defendants attach the "Mediation Minute Sheet" which states in part, "Plaintiff Shari S. and Armeda Thomas by her attorney in fact Shari S. do hereby release all defendants for all claims . . . ." (Dk. 118, p. 9). It also states that, "The mediator was present while counsel for Shari & Armeda confirmed on the phone Shari authorized the . . . figure." (Dk. 118, p. 10). It would appear this latter statement is accompanied by the mediator's signature, but the filed copy of the minute sheet does not the bear the full signature. *Id.* At the top of the minute sheet, the following appears:

> 1) Each party or representative has had these minutes independently reviewed by their own counsel before signing, and
> 2) The party recognizes that this agreement can be offered as evidence of an enforceable agreement until superseded by a more formal document.
> Counsels' signature acknowledges these facts.

(Dk. 118, p. 9). Finally, the defendants' filing includes a cursory demand for sanctions under D. Kan. Rule 11. *Id.* at pp. 3, 5-6).

The court next entered an order for Armeda to show cause why her "motion/notice should not be summarily denied in light of the defendants' presentation and proof that Ms. Springer was attorney-in-fact for Armeda Thomas with the express authority to settle and compromise claims and that the Mediation Minute Sheet reflects Ms. Springer's appearance and actions in that capacity and her participation by telephone conference." (Dk. 119, p. 3). The court's order also stated that the defendants' request for sanctions would be disregarded due to non-compliance with Fed. R. Civ. P. 11(c)(2). *Id.*

On August 1, 2016, the plaintiff Springer filed a response. (Dk. 121). Springer first posits that the court should treat the parties' detailed discussion of the mediation conference as a waiver of the confidentiality provisions in Rule 16.3. As to Armeda's motion and to the defendants' argument on Springer being attorney-in-fact for Armeda, Springer submits:

> 2. The Plaintiff does not dispute the factual allegations made by Armeda Thomas. Since some of these allegations regard communications and contact with counsel, the Plaintiff is without knowledge so as to dispute the same. The Plaintiff would only note that the Plaintiff did not provide the Power of Attorney to the mediator before or during the mediation conference. Since the central facts in the Memorandum dictate the application of the rule at issue, the Plaintiff does not dispute the application of the rule.

(Dk. 121, pp. 1-2). While the last sentence certainly is lacking as to the specific reference intended by "Memorandum" and "rule at issue," the timing of Springer's filing would indicate that she is discussing the court's "Memorandum and Order" of July 28, 2016, and its discussion of Ms.

4

Springer being the attorney-in-fact for Armeda in the mediation. The court understands Springer as not disputing "application of the rule at issue," that is, she is the attorney-in-fact with the power to settle claims for Armeda, and the Mediation Minute Sheet shows she exercised that authority at the mediation conference. Springer devotes the balance of her filing to raising the new issue of the parties' inability to agree on the terms of "a formal, written settlement agreement" to be executed before dismissal of the case. (Dk. 121, p. 2). Springer represents that the extent of the mutual release is an important term to their mediated settlement, as there are and have been other cases between the parties. According to Springer, her counsel submitted a draft settlement agreement to the defendants, (Dk. 121-1, Ex. A), but the defendants countered with their own draft (Dk. 121-2, Ex. B), which has "substantially weakened the release language" and contradicts the settlement terms of the Mediation Minute Sheet. (Dk. 121, p. 3). Springer represents that she is "ready to resolve the case along the lines of the true mediated agreement, but will not proceed with a settlement that allows the Defendants to continue with additional rounds of costly and abusive litigation for years to come." (Dk. 121, pp. 4-5).

On August 9, 2016, Armeda filed her response to the court's show cause order. (Dk. 122). Armeda's attached affidavit states that neither she nor Springer provided the defendants with the DPOA or notified the defendants that Springer was exercising this authority in the mediation

conference. (Dk. 122-1). Armeda's affidavit, however, does not provide a basis for having personal knowledge of what Springer has done or said concerning the DPOA. Armeda also avers, "That despite the fact that I was not present at the mediation conference and I did not agree to any purported agreement or Mediation Minute Sheet, I am willing to approve the" proposed settlement agreement (Dk. 121-1, Ex. A), drafted and proposed by Springer's counsel. Armeda restates her position that a violation of Rule 16.3 "should end the discussion" but offers no supporting legal authority. Armeda next cites K.S.A. 58-652 and argues that the defendants have not provided any document showing that Springer was exercising her power of attorney at the mediation conference and that without this written notice then Armeda "is acting for herself." (Dk. 122). Armeda objects to the use of confidential settlement communications with the mediator and between counsel and the parties as in violation of K.S.A. 5-512(a). Finally, Armeda asks that if the court finds the purported settlement agreement enforceable against her, then its terms should be consistent with Exhibit A to Dk. 121-1.

   Finally, the defendants submitted a joint reply to the most recent filings of the plaintiff and Armeda. (Dk. 123). They indicate that Springer produced the DPOA during discovery in this case. They also submit another draft of the settlement agreement and represent that it, "closely follows the language of the substantive terms of the mediated settlement agreement

between the parties, as memorialized by the Mediation Minute Sheet." (Dk. 123, p. 4). They also point that the plaintiff's settlement agreement draft "includes a confidentiality provision that was not negotiated for or agreed to at mediation" and a disproportionate liquidated damages provision. (Dk. 123, p. 4).

Now turning to the Armeda's pending motion, the court finds nothing expressed in D. Kan. Rule 16.3(c)(2) that would encourage its use as the procedural standards necessarily determining the legality and enforceability of a settlement agreement. More importantly, the movant Armeda does not cite any case law that would support her use of this rule to set aside a settlement agreement merely because she chose to violate the rule by not being physically present at the mediation conference. The court summarily rejects Armeda's argument based on D. Kan. Rule 16.3(c)(2).

In her initial motion, Armeda also argued that her retained counsel appearing for her at the mediation conference lacked the authority to settle. The defendants then presented the plaintiff Springer as having the DPOA with settlement authority for Armeda and the Mediation Minute Sheet as confirming Springer's exercise of this authority. Armeda does not deny that Springer has this authority or that she could exercise such authority at the mediation conference. Instead, Armeda argues that Springer's authority somehow depends on her or Springer giving the defendants a copy of the DPOA or some other "written notice . . . that Springer was exercising her

7

authority to act as attorney-in-fact for" Armeda. (Dk. 122, p. 6). Armeda cites K.S.A. 58-652 which speaks to when the attorney-in-fact has a "duty to exercise the authority conferred in the power of attorney." Whether or not Springer owed a duty to act and whether she rightly refused to perform that duty are not the questions before the court. To the contrary, Springer exercised her authority as attorney-in-fact for her mother under the DPOA and settled all claims as reflected in the Mediation Minute Sheet. Springer does not dispute what the Mediation Minute Sheet states in this regard. Springer's counsel and Armeda's counsel also signed this mediation sheet acknowledging the "facts" stated therein which include "Armeda Thomas by her attorney in fact Shari S. do hereby release all defendants . . . ." (Dk. 118, p. 9). As there is no dispute that Springer had actual authority to settle as attorney-in-fact and that she exercised this authority as reflected in the Mediation Minute Sheet signed by the defendants and by all counsel, Armeda has failed to establish any legal basis for relying on K.S.A. 58-652 or on any supposed lack of written notice to the defendants. Armeda has not effectively presented any legal challenge to Springer's exercise of actual authority in settling Armeda's claims.

  Armeda's objects to disclosure of settlement communications and relies on K.S.A. 5-512(a) in arguing for the confidentiality of dispute resolution proceedings. Reliance on a state statute is misplaced on this procedural question which is governed by federal, not state, law. The court

finds the disclosures to date as coming within the exception of D. Kan. Rule 16(j)(2). Armeda's objection is overruled.

In sum, the court denies Armeda's motion which asks for an order finding that any settlement agreement reached in the mediation on May 6, 2016, is not enforceable against her. Her presentation does not factually dispute that the DPOA gave Springer actual authority to settle claims for her. Neither Springer nor Armeda effectively dispute that Springer exercised this actual authority on May 6, 2016, as expressly stated in the Mediation Minute Sheet that was signed by Springer's counsel and Armeda's counsel. The failure of Springer or Armeda to provide separate written notice to the defendants of Springer being Armeda's attorney-in-fact has not been shown to undermine the enforceability of the settlement agreement. Armeda's motion is denied.

Outside the scope of Armeda's original pending motion is another matter raised both in the plaintiff Springer's response (Dk. 121) and in Armeda's show cause memorandum (Dk. 122). Without filing a separate motion seeking enforcement of the settlement agreement, Springer and Armeda have informed the court of the parties' remaining dispute over drafts of the formal settlement agreement. The court is unable to resolve this dispute as it has not been properly framed for ruling. To assist the parties in moving this matter forward, the court offers the following. First, the parties are given thirty days to complete their efforts at finalizing their settlement

agreement. Second, based on the Mediation Minute Sheet, the court's impression remains that the parties settled this case and that the parties agreed the minute sheet could "be offered as evidence of an enforceable agreement until superseded by a more formal document." (Dk. 118, p. 9). Consistent with this impression, the defendants represent that, "the parties reached a mediated settlement agreement that was memorialized by the mediator, Jerry Palmer, and signed by all parties and their representatives, who were present in Mr. Palmer's office. The Mediation Minute Sheet is attached hereto as Exhibit A, and incorporated herein by reference." (Dk. 120, p.2, ¶ 6). Likewise, the plaintiff "confirms that the mediation was engaged on May 6, 2016. The Plaintiff materially participated in that mediation. After the mediation, the Plaintiff understood that the minutes of the mediation would be drafted in a formal, written settlement agreement that the parties would execute prior to a dismissal of the case." (Dk. 121, p. 2, ¶ 4). On its face, the Mediation Minute Sheet provides for a mutual broad release of, "all claims asserted in this litigation and for any & all claims either of them may have against any of the defendants now or in the future; the defendants likewise mutually release Shari S & Armeda Thomas for the same scope of claims." (Dk. 118, p. 9)(footnote indicates release includes trusts, estates and their successors, administrators, executors, and assignors). The Minute Sheet also states that, "This settlement does not impact claims & litigation of Armeda vs. Farm Bureau on and in related

10

annuity pending in Nevada." *Id.* Next to this last term is some additional writing that references the release of Farm Bureau and the listing of the two Farm Bureau policies. *Id*. Thus, the Mediation Minute Sheet is evidence of the parties' enforceable agreement absent a superseding formal document.

If the parties have not submitted agreed final settlement papers by September 19, 2016, and if no motion to enforce settlement agreement has been filed by September 30, 2016, the magistrate judge will resume pretrial supervision of this case for discovery and final pretrial order.

IT IS THEREFORE ORDERED that "Motion to Enforce Compliance of Rule 16.3 Violation" (Dk. 114) is denied;

IT IS FURTHER ORDERED that if the parties have not furnished the court with agreed final settlement papers by September 19, 2016, and if no motion to enforce settlement agreement has been filed by September 30, 2016, the magistrate judge will resume pretrial supervision and control of this case for discovery and final pretrial order.

Dated this 18th day of August, 2016, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge